IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM MUTUAL | : | CIVIL ACTION |
| AUTOMOBILE INSURANCE CO, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| DARREN S. LUGIANO, et al. | : | NO. 15-0575 |

**<u>MEMORANDUM AND ORDER</u>**

In this action, Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "Plaintiffs" or "State Farm") brought claims against Defendants, Darren S. Lugiano, D.C., and related chiropractic and/or medical providers (collectively, "Defendants") for violations of the Pennsylvania Insurance Fraud statute, as well as for fraud, unjust enrichment, and restitution for mistaken payments under applicable insurance policies.  Doc. 1.  Presently before the court is State Farm's motion for leave to file an amended complaint adding a declaratory judgment count.  Doc. 52 (motion) & Doc. 52-2 (proposed amended complaint).[1]  For the reasons stated herein, the motion will be denied.

---

[1] The Honorable L. Felipe Restrepo has referred all pretrial non-dispositive matters to the undersigned.  Doc. 29; <u>see</u> 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  "Under ordinary circumstances a motion to amend a complaint is a pretrial matter not dispositive of a claim or defense of a party within the purview of Fed. R. Civ. P. 72(a)."  <u>Pagano v. Frank</u>, 983 F.2d 343, 346 (1st Cir. 1993) (quotation omitted) (magistrate judge's denial of plaintiff's motion to amend was an order on a non-dispositive matter).  Although the Third Circuit has not ruled squarely on the question whether the denial of a motion to amend is dispositive or non-dispositive, it cited the First Circuit's ruling in <u>Pagano</u> with approval in holding that a magistrate judge's order that permitted a plaintiff to amend only upon the payment of sanctions was a non-dispositive order. <u>Continental Casualty Co. v. Dominick D'Andrea, Inc.</u>, 150 F.3d 245, 251 (3d Cir. 1998). Additionally, courts within this circuit generally treat such orders as non-dispositive.  <u>See</u>, <u>e.g.</u>, <u>Shiloh v. Hassinger</u>, No. 4:12-CV-1086, 2015 WL 4404870, at *1 n.1 (M.D. Pa. Jul. 17, 2015) (citing cases).

I.   **BACKGROUND**

On February 5, 2015, State Farm commenced this suit alleging that Defendants engaged in a scheme to defraud State Farm through their submission of bills and related documentation for medically unnecessary chiropractic services that were performed pursuant to a fraudulent, predetermined treatment protocol.  Doc. 1 ¶¶ 12, 14-17.  In the complaint, State Farm alleges that Defendants' patients were not legitimately evaluated, diagnosed, or treated to address their individual needs, but were instead processed in such a way as to enrich Defendants at State Farm's expense.  Id.  The complaint further alleges that Defendants submitted "false, fabricated, misleading, and inaccurate" medical records dating between 2010 and 2013 respecting a non-exhaustive list of sixty-one patients.  Id. ¶ 38.  The complaint asserts common law fraud (Count I), violations of the Pennsylvania Insurance Fraud statute (Count II), unjust enrichment (Count III), and restitution for mistaken insurance reimbursement payments (Count IV), and seeks recovery of fraudulently obtained payments.  Id. ¶¶ 44-72.

On April 17, 2015, Defendants filed an answer denying State Farm's allegations, together with new matter and a counterclaim, and on May 21, 2015, Defendants filed an amended counterclaim.  Docs. 13 & 20.  In the amended counterclaim, Defendants assert claims against State Farm for antitrust violations (Count I), defamation (Count II), commercial disparagement (Count III), tortious interference with existing and prospective economic relations (Count IV), abuse of civil process (Count V), and civil conspiracy (Count VI).  Doc. 20.  In short, Defendants allege that State Farm's lawsuit and related

actions[2] are intended to discourage treatment with Defendants, and that State Farm

conspired with law firms to manufacture false fraud claims by, among other things,

engaging in "shadow discovery" in personal injury lawsuits to advance the present suit

and cause Defendants undue expense.  Id. ¶¶ 75, 97-98, 110.  On June 19, 2015, Plaintiffs

filed a motion to dismiss Defendants' amended counterclaims for failure to state a claim

upon which relief can be granted.  Doc. 31.  The motion to dismiss remains pending.

Meanwhile, after State Farm commenced this action, Defendants filed at least ten

separate lawsuits against State Farm in the Philadelphia Court of Common Pleas, each

seeking payment of chiropractic bills Defendants submitted to State Farm but which State

Farm denied based on an allegation of fraud.  Doc. 52-1 at 2-3.[3]  According to State

Farm, there are approximately 150 different outstanding claims for such payment, and

Defendants "have indicated that they will put all of these claims into suit."  Doc. 54 at 2.

Defendants do not dispute that they anticipate filing numerous additional similar lawsuits

against State Farm in state court.

On November 2, 2015, State Farm filed the present motion for leave to file an

---

[2]Among other things, Defendants allege in their amended counterclaim that State Farm sent letters informing insureds that their claims related to treatment received from Defendants were denied due to the fraud allegations in the present litigation, and Defendants aver in their response to the present motion that "State Farm initiated a computerized block of any and all future payments to any tax identification number associated with the Lugiano entities."  See Doc. 20 ¶¶ 97-98; Doc. 53 ¶ 2.  The computerized blocks are known as TIN blocks.  Doc. 53 ¶ 2.

[3]The state court lawsuits, case captions and filing dates are listed in Plaintiffs' memorandum of law in support of the present motion.  See Doc. 52-1 at 2-3.  Defendants do not contest this information.

amended complaint, seeking to add Count V seeking a declaratory judgment that it has no

legal or equitable obligation to pay Defendants for certain bills submitted prior to, or

following, commencement of this suit, including those already placed at issue in the state

court actions, and those which are expected to be filed.  See Doc. 52 (motion) & Doc. 52-

2 ¶¶ 73-80 (proposed declaratory judgment count).[4]  The parties have submitted

responsive briefs, see Docs. 53, 54 & 59, and the matter is ripe for disposition.


## II.    DISCUSSION

---

[4]State Farm's proposed judgment would declare that:

(i)     State Farm has no legal or equitable obligation to pay
        Defendants for any bills submitted prior to the
        commencement of this action;

(ii)    State Farm has no legal or equitable obligation to pay
        Defendants for any bills submitted following the
        commencement of this action that include false,
        misleading, inaccurate, and/or fabricated medical and
        chiropractic records, reports, bills, and other
        documents, statements and representations[;]

(iii)   State Farm has no legal or equitable obligation to pay
        Defendants for any bills submitted following the
        commencement of this action for examinations,
        treatment, testing, equipment or services that were not
        provided, were not reasonable or necessary, or that are
        based on Chiropractic Records that document
        subjective complaints, physical examination findings,
        diagnoses, services, and/or prognoses, which were pre-
        determined, exaggerated and/or false[;]

(iv)    State Farm has no legal or equitable obligation to pay
        Defendants for any bills submitted following the
        commencement of this action in claims identified in
        [an exhibit attached to the amended complaint].

Doc. 52-2 ¶ 80.

A.    **Legal Standards**

1.    Rule 15(a)(2)

State Farm's motion to amend falls under Rule 15(a)(2), which directs that "the court should freely give leave [to amend pleadings] when justice so requires."  Fed. R. Civ. P. 15(a)(2).[5]  The Third Circuit has recognized a "strong liberality . . . in allowing amendments under Rule 15(a)."  Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (citations omitted). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)).  The decision whether to permit amendment is discretionary, but leave should not be denied without explanation.  See Shane, 213 F.3d at 115 (citing Forman v. Davis, 371 U.S. 178, 182 (1962)).

In denying a motion to amend on grounds of futility, "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Holst v. Oxman, 290 Fed. Appx. 508, 510 (3d Cir. 2008) (quoting Shane, 213 F.3d at 115).  This assessment involves "the same standard of legal sufficiency as applies under Rule 12(b)(6)." Holst, 290 Fed. Appx. at 510; see also Bridgeport Music v. Universal Music Group, Inc., 248 F.R.D. 408, 416 (S.D.N.Y. 2008) ("A motion to amend may be denied as futile if the amendment would not withstand a motion to dismiss pursuant to Rule 12(b)(6).").  Therefore, a court must take all well-pleaded facts in the proposed

---

[5]Amendment as a matter of course pursuant to Rule 15(a)(1) is not applicable here as State Farm sought leave to amend more than twenty-one days after Defendants answered the complaint.

amendment as true and view them in the light most favorable to the plaintiffs.  See
Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

> 2.    Declaratory Judgment Act

As previously noted, State Farm seeks to amend its complaint to add a declaratory
judgment count.  The Declaratory Judgment Act creates a remedy by which federal courts
"may declare the rights and other legal relations of any interested party seeking such
declaration" when there is a "case of actual controversy."  28 U.S.C. § 2201(a).  The
court's exercise of jurisdiction over declaratory judgment actions is discretionary.
Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942); Interdigital Tech. Corp. v.
OKI Am., Inc., 845 F.Supp. 276, 287 (E.D. Pa. 1994).  "A 'case of actual controversy'
means one of a justiciable nature."  Wyatt, V.I., Inc. v. Gov't of the V.I, 385 F.3d 801,
805 (3d Cir. 2004) (quoting Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 325
(1936)).  As the Supreme Court has explained, in order for there to be a "case of actual
controversy," it must be

> one that is appropriate for judicial determination.  A
> justiciable controversy is thus distinguished from a difference
> or dispute of a hypothetical or abstract character; from one
> that is academic or moot.  The controversy must be definite
> and concrete, touching the legal relations of parties having
> adverse legal interests.  It must be a real and substantial
> controversy admitting of specific relief through a decree of a
> conclusive character, as distinguished from an opinion
> advising what the law would be upon a hypothetical state of
> facts.

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937).  Additionally, the conflict
between the parties must be ripe for judicial intervention, and it "must have taken on

fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."  Wyatt, 385 F.3d at 806 (quoting Pub. Serv. Comm'n v. Wycoff Co, Inc., 344 U.S. 237, 244 (1952)); see also Interdigital, 845 F.Supp. at 287 (the court should decline to hear a declaratory judgment action "where it will serve no useful purpose, or where the parties' contemplated future actions are likely to be unaffected by the entry of judgment") (quoting Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 649 (3d Cir. 1990)).

Where the proposed declaratory judgment implicates insurance coverage issues, courts in this jurisdiction have set forth several factors to be considered in weighing whether to exercise jurisdiction.[6]  Among the most important of these is "whether the questions in controversy between the parties to the federal suit . . . can better be settled" in a pending action in state court.  Brillhart, 316 U.S. at 495; see also Reifer v. Wesport Ins. Corp., 751 F.3d 129, 139-40, 144 (3d Cir. 2014) (reviewing history of relevant case law and concluding that "the absence of pending parallel state proceedings militates

---

[6]State Farm argues that because its action does not seek a ruling on an insurance contract provision or insurance coverage, but is "primarily a fraud case (common law and statutory insurance fraud)," the factors applicable in the context of insurance-related declaratory judgment actions do not apply.  Doc. 54 at 2.  I disagree.  In this action, State Farm seeks damages to recoup money it paid in allegedly fraudulent claims, and a declaratory judgment that it does not have to pay outstanding claims in cases presently pending in state court, or likely to be filed there, due to ongoing fraud.  The current and prospective claims (as well as defenses) arise from insurance contracts, and therefore the proposed declaratory judgment ruling would directly impact insureds' entitlement to coverage under their respective insurance policies.  Therefore, the factors considered relevant in the context of declaratory judgment cases involving insurance coverage are applicable.

significantly in favor of exercising jurisdiction, although it alone does not require such an exercise."). Brillhart gave rise to three primary factors for federal courts to consider, namely whether entertaining the declaratory judgment action will: (1) avoid needless determination of state law issues, (2) discourage forum shopping, and (3) avoid duplicative litigation. See, e.g., R.R. St. & Co. Inc. v. Transp. Ins. Co., 656 F.3d 966, 975 (9th Cir. 2011) (discussing Brillhart). In Reifer, the Third Circuit placed these factors in a more comprehensive list, stating that a district court should give "meaningful consideration" to eight factors:

> (1)     the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2)     the convenience of the parties;
>
> (3)     the public interest in settlement of the uncertainty of obligation;
>
> (4)     the availability and relative convenience of other remedies;
>
> (5)     a general policy of restraint when the same issues are pending in a state court;
>
> (6)     avoidance of duplicative litigation;
>
> (7)     prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and
>
> (8)     (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

8

751 F.3d at 146.  The court indicated that the factors should be considered "to the extent they are relevant," and characterized them as "non-exhaustive."  Id.

With these principles in mind, I will turn to State Farm's motion to amend the complaint.

### B.   The Proposed Amendment Would be Duplicative and Futile

State Farm argues that good cause exists for granting leave to amend the complaint because its original complaint alleges that Defendants engaged in a scheme to defraud State Farm through the submission of fraudulent insurance claims, and its proposed declaratory judgment claim seeks a ruling that it has no legal obligation to pay Defendants for the same services because they are fraudulent.  See Doc. 52-1 at 5.  State Farm further argues that the proposed declaratory judgment would serve a useful purpose because if State Farm succeeds in showing that Defendants have engaged in a pattern of fraud, the federal court would declare the claims asserted in the state court actions to be non-compensable.  See Doc. 54 at 5.  Defendants counter that the proposed amendment would be futile insofar as there is no justiciable controversy presented by the proposed declaratory judgment, no federal issue is raised by the proposed amendment, and the proposed amendment does not change or clarify the legal status of the parties.  Doc. 53-1 at 2-7.

As previously noted, the Declaratory Judgment Act requires the existence of a "case of actual controversy," meaning a judiciable controversy.  28 U.S.C. § 2201(a); Wyatt, 385 F.3d at 805.  Interrelated with this determination is the ripeness doctrine, which prevents the courts from engaging in premature adjudications.  Wyatt, 385 F.3d at

9

806.  State Farm argues that a judiciable controversy exists between the parties as

evidenced by this federal action in which it alleges that Defendants have engaged in a

pattern of fraud, and by the series of lawsuits commenced by Defendants in the state

courts seeking reimbursement for services which State Farm alleges were fraudulent.

State Farm seeks a judgment declaring that it has no legal or equitable obligation to pay

Defendants for any bills submitted prior to the commencement of this action (February 5,

2015), and for any bills submitted following that date which include, among other things,

"false, misleading, inaccurate, and/or fabricated medical and chiropractic records," and

for any treatment "not reasonable or necessary."  Doc. 52-2 ¶ 80.

      To determine whether State Farm should be permitted to add its proposed

declaratory judgment count, it is necessary to clarify the relief it is seeking.  State Farm's

proposed amendment appears designed to achieve two ends.  First, with respect to claims

for payment that are already addressed in its original complaint, it seeks a declaration that

the claims are fraudulent.  With respect to these claims, the declaratory judgment count is

entirely duplicative of its pending claims.  That is, in its counts that are already pending,

State Farm seeks recovery of all amounts paid to Defendants as well as other relief based

upon fraudulent misrepresentations in the treatment provided to State Farm insureds and

their billing practices for such treatment.  With respect to any claim for payment which

State Farm proves to be fraudulent, by definition such claim will be declared fraudulent

and appropriate relief will be awarded.  Thus, adding a declaratory judgment count will

add nothing either to State Farm's proof or its recovery for such claims.  Although that

may not bar the availability of declaratory relief, it provides an appropriate basis for the

court to exercise its discretion not to permit amendment of the complaint to add a count claiming such relief.  State Farm will lose nothing by the denial of its motion.

Second, State Farm seeks a declaration that claims that is has not paid – comprised of claims submitted by Defendants and to be submitted by Defendants in the future (some of which are the subject of pending and to-be-filed state-law actions brought by Defendants) – are fraudulent.  With respect to these claims for payment, State Farm's declaratory judgment demand is not ripe.  It essentially puts the proverbial carriage before the horse by requesting a declaration of fraud before a claim has even been made. That is, it cannot be determined in this litigation what injuries State Farm's insureds will suffer in the future, what treatment will be rendered by Defendants, and whether such treatment will be reasonable and necessary.  In effect, therefore, State Farm seeks a declaration that all services rendered by Defendants to the insureds prior to February 5, 2015, were fraudulent, and that nebulous and broad categories of treatment rendered after commencement of this action, including hypothetical future services, are and will be fraudulent as well.  A declaratory judgment is not proper in such circumstances.  See Wyatt, 385 F.3d at 806 ("A dispute is not ripe for judicial determination 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting Doe v. County of Centre, 242 F.3d 437, 453 (3d Cir. 2001) (further citations omitted)).

Moreover, contrary to State Farm's argument that the Third Circuit's Reifer factors weigh in favor of granting leave to seek a declaratory judgment, see Doc. 54 at 3-5, those factors weigh against the proposed amendment.  The first factor – the likelihood

11

that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy – appears on its face to weigh in State Farm's favor insofar as it would allow it to deny all claims for services rendered by Defendants prior to February 5, 2015, as well as a broad category of claims moving forward. However, this is problematic for the reasons already discussed, specifically the unknowable nature of the insureds' future injuries, or the nature and necessity of any treatment that would be rendered by Defendants going forward. The breadth and scope of the proposed declaration seems to invite future uncertainly and litigation, rather than resolve it. For similar reasons, the factors related to convenience of the parties and avoidance of duplicative litigation do not weigh heavily in favor of granting the motion.

Other Reifer factors weigh heavily against granting the motion. For example, the concern that a declaratory judgment action would be used for "procedural fencing or as a means to provide another forum in a race for res judicata," see 751 F.3d at 146, is clearly implicated in State Farm's proposed declaratory judgment. In this regard, it is noteworthy that State Farm did not seek a declaratory judgment seeking to have broad categories of Defendants' reimbursement claims declared non-compensable until after Defendants started filing state court lawsuits seeking payment of un-reimbursed bills.

More importantly, factors related to the availability and relative convenience of other remedies, and the general policy of restraint when the same issues are pending in a state court, weigh heavily against granting the motion. Although the pending state court actions do not include the claims brought by State Farm in this federal action, State Farm's defense of those claims rests on the same alleged fraud which is at the heart of

12

this action.  As State Farm stated in its reply brief: "If State Farm is successful in this case and proves that the Defendants are engaging in a widespread patter of fraud, as alleged, then the Court will declare those outstanding claims as non-compensable. However, if State Farm fails to meet its burden of proof in this lawsuit, then it must pay those outstanding claims."  Doc. 54 at 4.  Clearly, therefore, Defendants' alleged fraud is at issue in both the federal and state action.

Significantly, this is not a case where the federal court is presented with federal statutory interpretation or some other issue to which the federal courts are uniquely qualified.  To the contrary, State Farm seeks a declaration that it "has no legal obligation to pay Defendants for services that are fraudulent," Doc. 52-1 at 5, a rather unremarkable assertion fully consistent with state law.  For example, the Pennsylvania Motor Vehicle Financial Responsibility Law includes provisions which limit insurance coverage for injuries sustained in a motor vehicle accident to "reasonable and necessary medical treatment and rehabilitative services," and which outline the circumstances under which an insurer may deny payment to a medical provider who has submitted bills for such treatment.  75 Pa. C.S.A. §§ 1712, 1797.  Also, the crime of insurance fraud is clearly defined by the Pennsylvania Insurance Fraud statute.  See 18 Pa. C.S.A. § 4117.

State Farm's proposed declaratory judgment does not seek a ruling on a specific insurance contract provision, but it does seek a judgment declaring that it has no legal or equitable obligation to pay Defendants for, among other things, any bills which include "false, misleading, inaccurate, and/or fabricated medical and chiropractic records," and for any treatment "not reasonable or necessary."  Doc. 52-2 ¶ 80.  Although such

13

determinations require factfinding on each claim submitted, the proposed declaratory

judgment would preclude the state courts from reaching the merits of individual

insurance reimbursement claims under state law.  This I decline to do.  See Wilton v.

Seven Falls Co., 515 U.S. 277, 282-83 (1995) ("[D]istrict court courts possess discretion

whether and when to entertain an action under the Declaratory Judgement Act," and

"where another suit involving the same parties and presenting opportunity for ventilation

of the same state law issues is pending in state court, a district court might be indulging in

'[g]ratuitous interference' . . . if it permitted the federal declaratory action to proceed.")

(internal citation omitted).

In sum, I conclude that the declaratory judgment State Farm seeks to add to the

complaint does not constitute "a real and substantial controversy admitting of specific

relief through a decree of a conclusive character," see Wyatt, supra, but rather seeks to

foreclose consideration of insurance reimbursements that the state courts are best

positioned to address on an individual basis.  Therefore, the motion to amend will be

denied.[7]  An appropriate Order follows.

---

[7]Defendants also impugn State Farm's motives in seeking leave to amend,
accusing State Farm of such things as "bad faith litigation tactics," "blinding zealotry," "a
fanatic belief in the truth of its own opinions," and seeking "free reign to destroy
[Defendants] with crushing litigation expenses. . . ."  Doc. 53-1 at 3; Doc. 59 at 1, 3.
Because I will deny the motion to amend based on other grounds, I do not find it
necessary to address Defendants' bad faith argument.